1      **UNITED STATES DISTRICT COURT**

2      **DISTRICT OF NEVADA**

3

4      BROCK KING LEWIS,                                    3:15-cv-0553-MMD-VPC

5                                    Plaintiff,

6           v.

7      CAROLYN W. COLVIN,                        **REPORT AND RECOMMENDATION**
       Acting Commissioner of Social Security,    **OF U.S. MAGISTRATE JUDGE**

8
                                     Defendant.
9

10

11          This Report and Recommendation is made to the Honorable Miranda M. Du, United

12   States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

13   U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for remand and/or

14   reversal (ECF No. 17), defendant's opposition and cross-motion to affirm (ECF Nos. 19/20), and

15   plaintiff's opposition and reply (ECF Nos. 24/25).  For the reasons set forth herein, the court

16   recommends that plaintiff's motion for remand be granted and defendant's cross-motion be

17   denied.

18          **I.      FACTUAL AND PROCEDURAL BACKGROUND**

19          In November 2012 Brock King Lewis ("plaintiff") protectively filed for Social Security

20   Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Title II

21   and Title XVI of the Social Security Act.  (Administrative Record ("AR") 202–14.)  In both

22   applications, he alleged his disability commenced on October 1, 2009.  (*Id.*)  The Social Security

23   Administration denied plaintiff's application in the first instance on March 21, 2013, and upon

24   reconsideration on July 15, 2013.  (*Id.* at 130–37, 140–49.)

25          Plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison

26   on July 30, 2014.  (*Id.* at 38–67.)  He was represented by Marilyn King ("King"), his mother, who

27   is serving as his non-attorney representative in this matter.  (*Id.*)  Katie Macy-Powers, a

28   vocational expert ("VE"), also appeared.  (*Id.*)  The ALJ issued a written decision on August 1,

1    2014, finding that plaintiff had not been disabled at any time between the alleged onset date and

2    the date of the decision.  (*Id.* at 17–37.)  Plaintiff appealed, and the Appeals Council denied

3    review on May 20, 2015.  (*Id.* at 1–7.)  Accordingly, the ALJ's decision became the final decision

4    of the Commissioner ("defendant").

5         Having exhausted all administrative remedies, plaintiff filed a complaint for judicial

6    review on November 13, 2015.  (ECF No. 1.)  Plaintiff contends that remand or reversal is

7    warranted on several grounds: (1) the ALJ did not conduct a fair and unbiased hearing or allow

8    King to serve as an effective representative; (2) the ALJ erred at step two by failing to identify

9    plaintiff's sleep disorder as a severe condition; (3) the ALJ erred at step three by failing to find

10   that plaintiff's impairments meet the requirements of Listing 12.04 (4) the ALJ's disproportionate

11   focus on plaintiff's alcohol abuse improperly colored her credibility determinations.  (ECF No.

12   17.)  As a result, plaintiff requests that the nondisability determination be reversed and remanded

13   for an award of benefits or for further proceedings.  (*Id.*)

14                          **II.    STANDARD OF REVIEW**

15        The initial burden of proof to establish disability in a claim for benefits rests upon the

16   claimant.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To satisfy this burden, the

17   claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

18   any medically determinable physical or mental impairment which can be expected . . . to last for a

19   continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

20        This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after

21   the claimant has exhausted all administrative remedies.  *See Brewes v. Comm'r of Soc. Sec.*

22   *Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012).  The court must affirm the ALJ's decision

23   unless it rests on legal error or is unsupported by substantial evidence in the administrative

24   record.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g)

25   ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

26   evidence, shall be conclusive.").  The substantial evidence standard is not onerous.  It is "more

27   than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

28

2

1   mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th

2   Cir. 2012) (internal quotation omitted).

3       Although the ALJ need not discuss every piece of evidence in the record, she cannot

4   ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th

5   Cir. 2012).  The ALJ's discussion must adequately explain the decision in light of such evidence.

6   "The ALJ, not the district court, is required to provide specific reasons for rejecting [the

7   evidence.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

8   discussing rejection of lay testimony).  The district court's review is thus constrained to the

9   reasons asserted by the ALJ.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

10      To determine whether substantial evidence exists, the court must look at the record as a

11  whole, considering both evidence that supports and undermines the ALJ's decision; it "may not

12  affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.

13  Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted).  Where "the evidence is

14  susceptible of more than one rational interpretation, the decision of the ALJ must be upheld."

15  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted).  The ALJ alone is

16  responsible for determining credibility and resolving ambiguities.  *Garrison*, 759 F.3d at 1010.

17                          **III.    DISCUSSION**

18  **A.    SSDI and SSI claims are evaluated under a five-step sequential process.**

19      The Commissioner follows a five-step sequential process for determining whether a

20  claimant is "disabled" for the purposes of SSDI and SSI.   20 C.F.R. §§ 404.1520(a)(4);

21  416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one directs the ALJ to

22  determine whether the claimant is engaged in "substantial gainful activity."   20 C.F.R. §§

23  404.1520(a)(4)(i); 416.920(a)(4)(i).  If so, the claimant is not disabled and the Commissioner

24  denies the claim.  *Id.* §§ 404.1520(b), 416.920(b).

25      The second step requires the ALJ to determine whether the claimant's medically

26  determinable impairment is "severe."   *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   "Severe"

27  impairments are those that significantly limit the claimant's physical or mental ability to do basic

28

3

1  work activities. *Id*. §§ 404.1520(c), 416.920(c). The Commissioner will deny the claim if the

2  claimant lacks a severe impairment or combination of impairments. *Id*.

3  At step three, the claimant's impairment is compared to those listed at 20 C.F.R. Pt. 404,

4  Subpart P, Appendix 1 ("List of Impairments"). *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

5  The List of Impairments "define[s] impairments that would prevent an adult, regardless of his

6  age, education, or work experience, from performing *any* gainful activity, not just 'substantial

7  gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a))

8  (emphasis in original). Where the claimant's impairment is on the list, or is equivalent to a listed

9  impairment, and the claimant also meets the corresponding durational requirement, the claimant

10 is deemed disabled. 20 C.F.R. §§ 404.1520(d); 416.920(d). However, for an impairment to

11 match a listing, "it must meet *all* of the specified medical criteria. An impairment that manifests

12 only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530

13 (emphasis in original).

14 If the Commissioner does not find disability at step three, review of the claim proceeds to

15 step four. There, the ALJ considers whether the claimant can perform past relevant work despite

16 the severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is

17 not disabled. *Id*. §§ 404.1520(e), 416.920(e). The ALJ will find that the claimant can return to

18 past relevant work if he or she can perform the "actual functional demands and job duties of a

19 particular past relevant job" or the "functional demands and job duties of the [past] occupation as

20 generally required by employers throughout the national economy." *Pinto v. Massanari*, 249

21 F.3d 840, 845 (9th Cir. 2001) (internal quotation omitted).

22 In making the step four determination, the ALJ considers the claimant's residual

23 functional capacity ("RFC") and the physical and mental demands of the work previously

24 performed. 20 C.F.R. §§ 404.1520(f), 416.9209(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231

25 (9th Cir. 2010). The RFC is the most the claimant can do despite his limitations. 20 C.F.R. §§

26 404.1545(a)(1), 416.945(a)(1). The ALJ determines the claimant's RFC by assessing all the

27 evidence, including medical reports and descriptions by the claimant and others of the claimant's

28 relevant limitations. *See id*. §§ 404.1545(a)(3); 416.945(a)(3). The ALJ is not, however, required

4

to accept as true every allegation the claimant offers. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). The ALJ follows a two-part inquiry where the claimant alleges subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* Social Security Regulation ("SSR") 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted). Second, if the first prong is met and no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations by articulating "clear and convincing" reasons for doing so. *Id.*

If step four demonstrates that the claimant cannot do the work he did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. §§ 404.1560(c), 416.960(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other jobs that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him to perform other occupations, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he is disabled and entitled to benefits *Id.* §§ 404.1520(g), 416.920(g).

**B.      The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above. The ALJ first determined that plaintiff had not engaged in substantial gainful activity since October 1, 2009, the alleged onset date. (AR 22.) At step two, the ALJ found that plaintiff suffered from bipolar disorder and alcohol dependence, and that those impairments were

severe.  (*Id.*)  The ALJ also weighed evidence in the record regarding hypertension and obesity, but found those conditions to be nonsevere.  (*Id.*)

At step three the ALJ considered whether plaintiff's severe impairments met or medically equaled the severity of any listed impairments, either singularly or in combination, and concluded that they did not.  (*Id.* at 23.)  Specifically, with regard to listing 12.04, the ALJ found that plaintiff had mild restrictions in his activities of daily living, had moderate difficulties with social functioning and concentration, persistence, or pace, and had not experienced any episodes of decompensation of extended duration.  (*Id.*)  She also found that plaintiff did not meet the requirements of listing 12.09.  (*Id.*)

The ALJ proceeded to step four and made several findings.  To begin, the ALJ concluded that plaintiff's RFC allowed for a full range of work at all exertional levels, but that plaintiff could have no more than brief or superficial contact with co-workers, supervisors, and the general public.  (*Id.* at 24.)  In so finding, the ALJ determined that plaintiff's impairments could be expected to cause the symptoms alleged, but that his allegations of disabling symptoms and limitations were not entirely credible.  (*Id*. at 24–27.)  In support of the adverse credibility finding she cited a lack of significant findings within the objective treatment records, inconsistent statements or descriptions of alcohol use throughout the medical records, and ongoing non-compliance with treatment advice.  (*Id.* at 27.)  The ALJ also considered and weighed evidence submitted by other sources.  "[V]ery little weight" was given to the opinion of Dr. Thekkekara, plaintiff's treating psychiatrist, while significant weight was accorded to the opinions of Dr. Wildman, a consultative examiner, and the two non-examining State agency psychological consultants.  (*Id.* at 26–27.)  Little weight or credence was accorded to lay witness statements by King, plaintiff's siblings, and an employability expert.  (*Id.*)

Based on the evidence in the record and the testimony of the VE, the ALJ concluded that plaintiff was capable of performing his past relevant work as a laboratory assistant.  (*Id.* at 28.)  A claimant is deemed not disabled at step four if capable of performing past relevant work.  20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).  Nevertheless, the ALJ proceeded to step five and made an alternative finding.  Again with the help of the VE, and considering plaintiff's age, education,

work experience, and RFC, the ALJ identified three jobs existing in significant numbers in the national economy and which plaintiff could perform: a mail clerk, of which there are 69,000 jobs nationally; an industrial cleaner, of which there are 1,049,000 jobs nationally; and packager, of which there are 161,000 jobs nationally.  (AR 29.)  Accordingly, the ALJ held that plaintiff was not disabled and denied his SSDI and SSI claims.  (*Id.* at 30.)

**C.    Plaintiff provides insufficient evidence of bias or prejudgment.**

An ALJ must not conduct an administrative hearing in which he or she is prejudiced against either party or interested in the outcome of the decision.  20 C.F.R. §§ 404.940, 416.1440.  There is a strong presumption, however, that ALJs are unbiased.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  To rebut this presumption, a claimant must show a conflict of interest or other specific reason warranting disqualification.  *Id.* at 857–58.  An ALJ's sarcastic, impatient, annoyed, or even angry remarks "'that are within the bounds of what imperfect men and women . . . sometimes display'" are insufficient.  *Id.* at 858 (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)).  Rather, a claimant must "show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display a clear inability to render fair judgment.'"  *Id.* (quoting *Liteky*, 510 U.S. at 551).

Plaintiff has argued that the ALJ did not conduct a fair and impartial hearing.  He alleges that the ALJ told King she could not speak during the hearing, despite her role as plaintiff's representative, and later cut off King's attempts to help clarify plaintiff's statements.[1]  (ECF No. 17 at 3, 5; ECF No. 25 at 4–6.)  Plaintiff also maintains that the ALJ failed to take his mental limitations into account and was impatient with his difficulties testifying, at one point stating, "he keeps going back and forth on what's what and who's who."  (ECF No. 17 at 5; ECF No. 25 at 6; AR 66.)  He speculates that appearing while in a manic state would have done more to further his case.  (ECF No. 25 at 20.)

---

[1] The ALJ's alleged statement to King does not appear in the transcripts; plaintiff argues that it occurred prior to the point at which recording began.  (ECF No. 25 at 4.)  As defendant notes, the ALJ did at one point in the hearing invite King to ask questions of plaintiff.  (AR 56–60.)

1   If the hearing proceeded in the manner described, the court is troubled by the lack of

2   respect, patience, and professionalism on display.  This is not the first instance an appeal has

3   reached the court with complaints regarding this particular ALJ's hearing behavior.  *See Blea v.*

4   *Colvin*, No. 3:14-cv-00582-RCJ-VPC, R. & R. at 7–9, ECF No. 21 (Dec. 11, 2015).  Still, despite

5   plaintiff's suggestion to the contrary (*see* ECF No. 25 at 7), the court is bound by the precedent of

6   this circuit.  Plaintiff has failed to point to anything in the record that demonstrates the ALJ's

7   behavior was "so extreme" as to render her unfit to issue a fair judgment, or that goes beyond a

8   broad assertion that "the ALJ had prejudged his case in some way."  *See Valentine v. Comm'r of*

9   *Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The Ninth Circuit has held that an ALJ's

10   "general preconceptions" do not violate the Due Process Clause or warrant reversal of his or her

11   decision.  *Id.*  Thus, the court is unable to order remand on this basis.

12   **D.      If the ALJ erred at step two, the error was harmless.**

13   At step two of the five-step inquiry an ALJ will find a claimant not disabled if he or she

14   does not have a medically severe impairment or combination of impairments.  20 C.F.R. §§

15   404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The threshold for finding an impairment severe is a low

16   one, as its purpose is "to do no more than allow the Secretary to deny benefits summarily to those

17   applicants with impairments of a minimal nature which could never prevent a person from

18   working."  SSR 85-28, 1985 WL 56856, at *2 (internal citations and quotations omitted).  As

19   such, the Ninth Circuit has held that when step two is resolved in a claimant's favor, any error in

20   designating specific impairments as severe is harmless.  *Burch v. Barnhart,* 400 F.3d 676, 682

21   (9th Cir.2005).

22   The ALJ here resolved step two in plaintiff's favor, finding that his bipolar disorder and

23   alcohol dependence constitute severe impairments.  Therefore, even if the omission of his sleep

24   disorder was in error, the error does not warrant reversal.  (*See* ECF No. 25 at 12.)  Further, the

25   ALJ did not err in characterizing plaintiff's alcohol dependence as severe.

26   **E.      The ALJ's step three finding is not supported by substantial evidence.**

27   The conditions included on the List of Impairments are defined according to specific

28   medical signs, symptoms, or laboratory test results.  *Sullivan*, 493 U.S. at 530.  They "are

considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995). The claimant bears the burden of demonstrating that his impairment meets or equals a listing. *Burch*, 400 F.3d at 683. To meet that burden, he should "specify which listing [he] believes [he] meets or equals . . . [and] set forth any evidence which would support the diagnosis and findings of a listed impairment." *Id.*

Plaintiff argues that the ALJ erred in finding that his impairments do not meet the requirements of Listing 12.04. That listing provides that affective disorders, "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome," meet the required level of severity when the requirements in paragraphs A and B are satisfied, or when the requirements in paragraph C are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The ALJ concluded that plaintiff satisfied neither the paragraph B nor paragraph C criteria.[2]

To meet the requirements of paragraph B, a claimant must show that his or her affective disorder results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* at § 12.04(B). "Marked" means more than moderate but less than extreme. *Id.* at § 12.00(C)(3). "Episodes of decompensation" is defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* at § 12.00(C)(4).

Alternatively, a claimant can meet the requirements of paragraph C by showing a:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

---

[2] The court assumes that the paragraph A criteria are met, which include the "[m]edically documented persistence, either continuous or intermittent, of . . . [b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)." § 12.04(A)(3).

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.* at § 12.04(C).

With respect to both the paragraph B and paragraph C criteria, the ALJ stated that the record contained no evidence that plaintiff has experienced episodes of decompensation of extended duration.  (AR 23.)  As that portion of her decision contains no discussion of the relevant medical evidence, nor citations to the record, it is not entirely clear to the court which evidence the ALJ relied upon.  However, plaintiff disputes the finding, and maintains that the evidence "proves his case." (ECF No. 17 at 14.)  Within the meaning of the regulations, episodes of decompensation are considered "repeated," and "of extended duration," if the claimant experiences three episodes within a year, each lasting for at least two weeks.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).  "[M]ore frequent episodes of shorter duration or less frequent episodes of longer duration" may also satisfy the criteria if, in the ALJ's judgment, "the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence."  *Id.*  The episodes "may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation," or may be inferred from records showing a significant alteration in medication, documentation of the need for more structured psychological support, or other relevant information regarding the existence, severity, and duration of each episode.  *Id.*

Over the course of thirteen pages, plaintiff's motion discusses the medical and non-medical evidence that supports his argument, including a description of incidents in which he experienced anxiety attacks, mania, erratic sleep patterns, and memory loss.  (*Id.* at 15–27.)  One

of the documents cited is a summary prepared by King of plaintiff's behavior from January

through March of 2014:

> **January 19, 2014**:  Brock phoned this date in tears because, he said, "I saw a bird and started to cry."  For the next two hours or so he vacillated among tears and talking enthusiastically about a variety of subjects, his mood going up and down.

> **January 20, 2014**:  I picked Brock up and realized he looked upset and was trembling. He said he felt like he was going to "jump out of his skin."  He was agitated and remained so for at least the next three days.

> **February 2, 2014**:  I received an email from Brock's aunt asking me whether I knew why he had called her at 3 a.m. leaving a pleasant message asking her to call him back.  He has no memory of making that call.

> During a morning phone call Brock sounded irritable. He called back, eventually a dozen times.  He was increasingly angry, so repeatedly I said I need to hang up, and did. He would immediately call again. . . .  I finally raised my voice and told him firmly no one, including him, could talk to me that way.  His voice instantly changed to something more hesitant and quiet and he said something ordinary about football.  He then asked me, still hesitant, why I sounded upset.  The end result was I found out he had no memory of any of our conversations in any of the dozen phone calls . . . .

> **March 24, 2014**:  Brock called to tell me he had cancelled today's appointment with a doctor and scheduled it for next week.  He is again exhausted and not sleeping.  No amount of persuasion could get him to see the doctor today, while he is experiencing this.

(AR 329.)  The ALJ found King's statements "not objectively reliable or persuasive . . ." (*Id.* at

25.)  As discussed more fully below, however, the court finds that the ALJ erred at least in part by

rejecting such evidence.  Plaintiff also discussed the incidents with a medical provider on

February 18, 2014[3], and mentioned during the administrative hearing he had blacked out twice in

the past year for "spaces of time."  (*Id.* at 59, 652.)  Although not enough to prove plaintiff

experienced "repeated episodes of decompensation, each of extended duration," they certainly

---

[3]  "On the Superbowl [plaintiff] had a major panic attack that was incredibly scary.  He has had minor ones in the meantime.  He brings his Mother in today for corroboration.  This is happening weekly.  Apparently he called his Mother crying about . . . birds [*sic*] and the universe and laughing inappropriately.  This occurred for 2 hours and then for the next 4 days. . . .  When I asked him why he hasn't hospitalized himself [he said it] was because he felt that he wouldn't really hurt anyone but himself.  His Mother states that since he was 14 he has taken his rage out on her . . . . [and] that he doesn't tell people the real things that have been happening."  (AR 652.)

undermine the finding that plaintiff experienced *no* episodes of decompensation of extended duration.

Plaintiff also discusses Dr. Wildman's evaluation, to which the ALJ accorded significant weight. Therein, Dr. Wildman noted plaintiff's reported cycles of depression and of "great energy," and the doctor's belief that plaintiff "has entered into altered states of consciousness," his "bipolar disorder has at times been so severe that his perceptual distortions have risen to the level of a psychotic report," and "there have been times when [plaintiff] has had his reality contact compromised to a psychotic degree." (*Id.* at 454–46.) The ALJ failed to acknowledge those particular findings in her discussion, instead focusing on how plaintiff presented that day:

> The examiner, Dr. Wildman, noted, *upon initial inspection*, the claimant did not resemble a genuine psychiatric case including a friendly demeanor, high quality speech, well-organized thoughts, full orientation, adequate memory and cognition, no comprehension deficits, and adequate abstraction. Diagnostic impressions were bipolar disorder and alcohol dependence in subjectively reported remission; the claimant's [Global Assessment of Functioning "GAF"] score was measured at 65, indicative of only some mild symptoms *as presented*. Dr. Wildman concluded that the claimant was capable of sustaining work tasks of all levels of complexity; however, his reported problems with interacting with others may limit him to detailed work tasks.

(*Id.* at 26–27 (emphasis added).) The ALJ may not bolster her decision by pointing only to those portions of the medical records that support her findings. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001); *see also Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result").

Having reviewed the evidence of record, the court is concerned that the ALJ did not adequately account for the cyclical nature of plaintiff's bipolar disorder. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and treat as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017; *see also Durnil v. Colvin*, No. 1:14–CV–03112–VEB, 2015 WL 3994907, at *5–6 (E.D. Wash. July 1, 2015) (finding that the ALJ failed to consider the wax/wane cycle of bipolar disorder in assessing the paragraph B criteria). Although plaintiff bears the burden of proving

1   disability at step three, the ALJ's findings must nevertheless be supported by substantial

2   evidence.  Given the paucity of the analysis provided at step three, the court is unable to conclude

3   that is the case here.  Because the court is also unable to determine from the current record

4   whether plaintiff's impairments satisfy Listing 12.04, it recommends that the ALJ reconsider the

5   evidence and the listing requirements on remand.

6   **F.**     **The ALJ improperly rejected portions of King's lay witness testimony.**

7       King provided a variety of statements regarding plaintiff's day-to-day functioning,

8   including his moods, behavior, and sleep patterns.  The ALJ accorded the statements little weight.

9   (AR 24–26.)  Plaintiff argues the determination lacks the support of substantial evidence and was

10   improperly colored by the ALJ's impression of plaintiff's alcohol use.  (ECF No. 17 at 13.)  In

11   response, defendant maintains that the ALJ provided germane reasons for the weight accorded to

12   lay witness statements, and the determination is therefore free of error.  (ECF No. 19 at 5.)

13       It is well-established that "friends and family members in a position to observe a

14   claimant's symptoms and daily activities are competent to testify as to [his] condition." *Dodrill v.*

15   *Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993).  Indeed, "[n]umerous regulations command the

16   ALJ to consider, throughout the sequential process, lay testimony as to how claimant's

17   impairments affect their ability to work." *Stout*, 454 F.3d at 1056.  To discount such testimony,

18   the ALJ must articulate reasons germane to each witness and supported by substantial evidence.

19   *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).  For the reasons below, the court finds that

20   the ALJ failed to meet that standard with respect to significant portions of King's testimony.

21       The ALJ first stated that the third-party function reports completed by King "were

22   generally prefaced with 'from our conversations . . .' indicating they were just subjective reports

23   from the claimant." (AR 24.)  While true enough of certain comments (*see, e.g.*, *id.* at 285, 287),

24   King also included numerous first-hand observations that illustrate the effect plaintiff's

25   impairments have had on his life.  For example, in addressing whether she had noticed any

26   unusual behavior or fears, King stated:

27         Vocational Rehab. scheduled [plaintiff] for a trial work period stocking/cleaning at
        a thrift store.  The first week he rode the bus to and from.  On Friday I learned that

28         day he accidentally arrived an hour early, panicked, and went home.  I asked him if

1
2
3

> it would help if I gave him a ride to and from.  For the next 3 work weeks we did that, arriving in time to walk multiple times around the parking lot.  I talked with him about this and that, easy subjects, and when he got to where he could hand it he reported in.

4

(*Id.* at 291.)  King also described how she has seen plaintiff's moods, appearance, and actions

5

shift when he is depressed versus "up."  (*Id.* at 286, 290.)  As the Ninth Circuit has recognized,

6

lay witnesses "have to rely to some extent on communication with the claimant in ascertaining

7

whether [he] is disabled or malingering," but are nonetheless capable of "mak[ing] independent

8

observations on the claimant's pain and other symptoms."  *Dodrill*, 12 F.3d at 918–19.  While not

9

enough to establish disability, such observations constitute competent evidence that must be

10

considered.  *Id.*  In this case, King's observations appear highly relevant to plaintiff's ability to

11

function in a workplace, and should not have been dismissed wholesale as "just subjective reports

12

from the claimant."  (AR 24.)

13

Second, the ALJ found King's statements less credible because she rarely mentioned

14

plaintiff's alcoholism or treatment, "strongly suggest[ing] subjective advocacy rather than

15

objective reliability from the claimant's mother/representative."  (*Id.* at 26.)  Mischaracterization

16

of a claimant's alcohol use, done in an attempt to discount the extent or effects of his alcoholism,

17

is a germane reason for finding lay witness testimony less credible.  *Parra v. Astrue*, 481 F.3d

18

742, 751 (9th Cir. 2007) (affirming partial rejection of lay testimony as "colored by bias" where

19

witness's objective description of claimant's drinking habits conflicted with her subjective

20

characterization of those habits).  In this case, however, the ALJ has not pointed to anything

21

misleading within King's statements.  The ALJ presumes bias for King's failure to discuss

22

plaintiff's alcohol use with sufficient frequency, but does not articulate where she should have

23

been more forthcoming.  Within the function reports, which do not ask explicitly about substance

24

use, King noted in multiple answers that plaintiff has a history of alcohol use and attends

25

Alcoholic Anonymous ("AA") meetings.  (AR 253, 256, 285, 288, 289, 290.)   King also

26

discussed that history in greater detail in a supplemental document cited by the ALJ:

27
28

> In his 30s he began to self-medicate severe anxiety and other symptoms with alcohol . . . .   He developed the co-occurring disorder of alcoholism.   He eventually lost his productive and satisfying life and his marriage. . . .   He has

14

since addressed alcoholism with rehabilitation, ongoing medical and psychiatric care, and AA, which he continues to attend.

(*Id.* at 376.)

Plaintiff maintains that King did not delve further into plaintiff's alcoholism simply because "[a]lcohol was not [her] focus." (ECF No. 25 at 15; *see also* ECF No. 17 at 12 ("Since this result of self-medication was not considered his disabling condition, it was not dwelt upon . . . .").) Based on its review of the record, the court is inclined to agree. Further, to the extent the ALJ's analysis was colored by King's role as plaintiff's mother, that fact alone was not a sufficient reason to reject King's statements. *See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members." (citation omitted)).

Finally, the ALJ "len[t] very little credence to [King's] oft-repeated arguments that bipolar symptoms including mood problems, secondary erratic sleep patterns, and medication side effects collectively prevented [plaintiff] from consistently attending any job," describing her arguments as "circular" and "without significant support from any medically acceptable treating sources." (AR 25.) Here, the court finds no fault with the decision to reject any medical diagnoses or opinions that may have King offered. Testimony as to the cause of plaintiff's impairments is beyond her competency as a lay witness, and therefore does not constitute competent evidence. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (citing 20 C.F.R. § 404.1513(a)). However, the court takes notice that King's statements also contain observations as to plaintiff's mood swings, sleep patterns, medication side effects, and other ways his impairments affect his ability to work, which constitute competent evidence. *See id.* The ALJ could not properly discard those portions without germane reasons supported by substantial evidence. Because the court has found the above-cited reasons to be unsupported by substantial evidence, the ALJ erred.

## G. The ALJ articulated one clear and convincing reason for discounting plaintiff's credibility.

The ALJ did not point to evidence in the record that plaintiff was a malingerer. As such, she was required to provide clear and convincing reasons for finding plaintiff's subjective

15

1   testimony less than fully credible. *Lingenfelter*, 504 F.3d at 1036. The "clear and convincing"

2   standard is the most demanding standard in Social Security case law. *Garrison*, 759 F.3d at 1015.

3   Citing to the record, "the ALJ must specifically identify the testimony she or he finds not to be

4   credible and must explain what evidence undermines [it]." *Holohan*, 246 F.3d at 1208; *Dodrill*,

5   12 F.3d at 918. The ALJ may consider a variety of factors in weighing a claimant's credibility,

6   including inconsistencies within his testimony, reputation for truthfulness, an inadequately

7   explained failure to seek treatment, or a lack of support from the medical evidence. 20 C.F.R. §

8   404.1529(c); *Orn*, 495 F.3d at 636. The focus, however, is upon the reviewing court. The

9   credibility determination must be "sufficiently specific to allow a reviewing court to conclude the

10  ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the

11  claimant's testimony." *Rollins*, 261 F.3d at 856–57 (internal quotation and alterations omitted).

12       In her decision, the ALJ identified three reasons for the adverse credibility finding: (1) a

13  lack of significant findings within the objective treatment records, (2) ongoing non-compliance

14  with treatment advice, and (3) inconsistent statements or descriptions of alcohol use throughout

15  the medical records. (AR 27.) The court considers each in turn.

16       With respect to the objective treatment records, the ALJ noted that testing to determine the

17  cause of plaintiff's insomnia was inconclusive, including an EEG and an MRI that came back

18  normal. (*Id.* at 26.) She also discussed two psychiatric evaluations. The first, conducted in

19  December 2009, diagnosed plaintiff with bipolar disorder, alcohol dependence, and a GAF of 55

20  indicating just moderate symptoms. (*Id.*) Dr. Wildman's evaluation, conducted in February

21  2013, assessed plaintiff to have a GAF score of 65 as presented, indicating mild limitations, as

22  well as high quality speech, well-organized thoughts, full orientation, adequate memory and

23  cognition, no comprehension deficits, and adequate abstraction. (*Id.* at 27.)

24       The court is not persuaded that the records are a sufficient reason for discounting

25  plaintiff's testimony. As has been discussed, the ALJ ignored the less favorable portions of Dr.

26  Wildman's evaluation. There is also evidence in the record that plaintiff cancels or forgets

27  appointments with doctors when in a state of depression or mania, which, if true, suggests the

28  psychiatric evaluations and other treatment records paint an incomplete picture of plaintiff's

disorder.  (*See id.* at 327.)  Finally, the EEG, MRI, and sleep tests appear to prove little, as such tests are not generally used in diagnosing bipolar disorder, and the results do not rule out the presence of a sleep disorder, particularly if caused by plaintiff's bipolarism.  (*See* ECF No. 17 at 9, 11; *see also* Nat'l Inst. of Mental Health, *Neuroimaging and Mental Illness: A Window into the Brain* (2010), *available at* http://www.nimh.nih.gov/health/publications/neuroimaging-and-mental-illness-a-window-into-the-brain/neuroimaging-faq_58327.pdf.)

Second, the ALJ concluded that plaintiff was consistently not compliant with his medication and treatment advice, and that non-compliance rendered his subjective testimony less reliable.  In general, a claimant's failure to follow recommended treatment provides clear and convincing evidence for an adverse credibility finding.  *See Smolen*, 80 F.3d at 1284.  However, a "failure to comply with treatment may represent a symptom of [bipolar disorder]."  *Wake v. Comm'r of Soc. Sec.*, 461 F. App'x 608, 609 (9th Cir. 2011).  The Ninth Circuit has expressly found that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  *Nguyen*, 100 F.3d at 1465.  There is no indication from the decision that the ALJ considered the effect that bipolar disorder might have on plaintiff's attempts to comply with treatment.  Accordingly, the court finds it was inappropriate for her to find that plaintiff's non-compliance rendered his testimony less credible.

The final reason provided was the inconsistent statements in the medical records regarding plaintiff's alcohol use.  Plaintiff argues that he openly discussed his alcohol use with his medical providers, and that his memory issues justify any discrepancies between dates.  (ECF No. 17 at 13.)  Defendant counters that the ALJ's consideration of the inconsistencies was reasonable and permissible.  (ECF No. 19 at 11.)  An ALJ may discount claimant's credibility based on his or her inconsistent statements, including inconsistent statements regarding substance abuse.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming that a claimant's lack of candor regarding drug and alcohol use can "carr[y] over to her description of physical pain"); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1990) (relying on inconsistent statements regarding alcohol use to reject claimant's testimony).  In the decision, the ALJ noted the following reports of alcohol use: In January 2010, plaintiff told Dr. Thekkekara that he had one drink on December 25, 2009.  (AR

419.)  In March 2010 plaintiff relapsed and went to treatment, and in August 2010 he relapsed but was able to recover.  (*Id.* at 411, 418.)  Plaintiff reported ongoing sobriety in January 2011.  (AR 409.)  In April 2011, despite the August 2010 relapse, plaintiff stated that he had been clean and sober for one year.  (*Id.* at 407.)  In December 2011 plaintiff reported having one drink in August 2011.  (*Id.* at 405.)  Plaintiff denied alcohol use in February 2012 (*id.* at 402), but by December 2013 told his medical provider that he was "drinking occasionally"[4] (*id.* at 615).  On February 18, 2014 he reported that he "had one beer today since 2013 . . . because of the anxiety."  (*Id.* at 652.)  Two days later, on February 20, 2014, plaintiff told his provider that he had been sober the previous 6 months, but had three beers that day because he was stressed about his appointment.  (*Id.* at 650.)  That record describes plaintiff as "[a] social drinker."  (*Id.*)  In contrast, the March and April 2014 records describe plaintiff as "[n]ot using alcohol" and "[c]urrently sober from alcohol."  (*Id.* at 644, 656, 648.)  On July 30, 2014, less than six months after he reported having three beers, plaintiff told the ALJ that he had been sober for a year and a half.  (*Id.* at 51–52.)

The ALJ rationally interpreted these discrepancies as weighing against plaintiff's credibility.  Plaintiff may disagree with the analysis, and there may be "more than one rational interpretation," but where the ALJ's conclusion is supported by substantial evidence it must be upheld.  *See Burch*, 400 F.3d at 679.  Accordingly, the inconsistencies in the medical records regarding plaintiff's alcohol use were a legally sufficient reason upon which the ALJ could rely to support her adverse credibility determination.

The errors made with respect to the other two reasons could perhaps be characterized as harmless.  Review of the ALJ's credibility determination is a substantive analysis.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  "So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal.  *Id.* (quotation and alterations omitted) (finding the ALJ's errors harmless where two of the four reasons cited were clear and convincing); *see also Batson v. Comm'r of Soc. Sec.*

---

[4] Inexplicably, the same medical record states that plaintiff is "not using alcohol."  (AR 615.)

*Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding harmless error where the record did not support one of several reasons given for an adverse credibility finding).  Given, however, that just one of the proffered reasons meets the clear and convincing standard, and in light of the other errors within the decision, the court suggests that on remand the ALJ reconsider the extent to which she finds plaintiff's testimony credible.

**H.     The record warrants remand for further proceedings.**

The court has found that the ALJ's step three determination lacks the support of substantial evidence, and that the ALJ also erred in considering the testimony of King and of plaintiff.  Plaintiff suggests that he is entitled to an immediate award of benefits.  (ECF No. 17 at 30.)  A district court may remand a case to an ALJ with instructions to award benefits only where all three prongs of the credit-as-true test are met.  *Garrison*, 759 F.3d at 1020.  Under that test, (1) the record must be fully developed, such that further administrative proceedings would serve no purpose; (2) the ALJ must have failed to articulate legally sufficient reasons for rejecting medical opinion evidence or claimant's testimony; and (3) if on remand the rejected evidence were credited as true, the ALJ would be required to find the claimant disabled.  *Id.*  Even in the "rare circumstances" where the test is satisfied, a court may find that remand for further proceedings is appropriate.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

The first prong requires a reviewing court to consider "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules."  *Id.* at 1103–04.  "The touchstone for an award of benefits is the existence of a disability, not on the agency's legal error."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).  Although the ALJ erred in this case, the court cannot conclude that plaintiff is entitled to benefits.  Gaps in the record include, for example, whether plaintiff's impairments meet all the criteria of Listing 12.04.  In such a case, "the proper approach is to remand to the agency."  *Treichler*, 775 F.3d at 1105.

**V.     CONCLUSION**

For the foregoing reasons, the court concludes that the ALJ's nondisability determination rests on legal error and lacks the support of substantial evidence.  Because further proceedings

can rectify these errors and clarify ambiguities in the record, remand is appropriate.  The court recommends that plaintiff's motion for remand (ECF No. 17) be granted and defendant's cross-motion to affirm (ECF No. 19) be denied.

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### V.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (ECF No. 17) be **GRANTED** and the matter be remanded to the ALJ for further proceedings consistent with this decision;

**IT IS FURTHER RECOMMENDED** that defendant's cross-motion (ECF No. 19) be **DENIED;**

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: August 18, 2016.

**UNITED STATES MAGISTRATE JUDGE**

20